UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FEDERAL CORPORATION,

                      Plaintiff,         **MEMORANDUM AND ORDER**

 - against -                                    2:19-cv-6357 (DRH) (AYS)

FUTURE TIRE COMPANY, LTD.,

                      Defendant.
-------------------------------------------------------------X

**APPEARANCES**

**For Plaintiff:**
Kevin P. Mulry, Esq.
FARRELL FRITZ, P.C.
400 RXR Plaza
Uniondale, NY 11556

**For Defendant:**
Leo Fox, Esq.
630 Third Avenue – 18th Floor
New York, NY 10017

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Federal Corporation brings this contract action to recover $1,031,845.60 as payment on twenty-six invoices for tires supplied to Defendant Future Tire Company, Ltd. Presently before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

The following facts, taken from the parties' Local Rule 56.1 statements, are undisputed unless otherwise noted. (Pl.'s Statement of Material Facts [DE 25-15] ("Pl. 56.1"); Def.'s Statement of Material Disputed Facts [DE 25-22] ("Def. 56.1")).[1]

Plaintiff Federal Corporation ("Plaintiff"), a Taiwanese corporation, is a tire supplier and Defendant Future Tire Company, Ltd. ("Defendant"), a New York corporation, is a tire distributor operating across the Northeastern United States. (Pl. 56.1 ¶ 1; Pl.'s Letter dated Sept. 28, 2020 [DE 24]). The parties agree that, by 2017,[2] they were in a "contractual relationship" pursuant to which Plaintiff would deliver 20,000 tires every month to Defendant. (Pl. 56.1 ¶ 2; Answer ¶ 51 [DE 11]). Upon Defendant's acceptance, Plaintiff would transmit an invoice to Defendant, which an authorized representative of each party would then sign. (Pl. 56.1 ¶¶ 4–6; *see* Ex. A [DE 25-3 to -4] to Declaration of Joseph Kao ("Kao Decl.") [DE 25-2]). The contract was never formalized in writing, save for certain terms referenced in emails and text messages between the parties. (*See* Ex. I [DE 25-12] to Declaration of Kevin

---

[1] Defendant prepared its Rule 56.1 Statement not with affirmative "respon[ses] to each numbered paragraph in" Plaintiff's Rule 56.1 Statement, but rather in the nature of a Questions Presented. *See* Local Civil Rule 56.1. That is, Defendant's numbered paragraphs articulate the material facts in the context of a broad legal question, *e.g.*, "[w]hether Plaintiff and Defendant entered into an exclusive agreement . . . ," (Def. 56.1 ¶ 1), "[w]hether Plaintiff breached the [a]greement . . . ," (*id.* ¶ 2), and "[w]hether Federal Corporation breached the [a]greement . . . ," (*id.* ¶ 3).

[2] Defendant's declarant Richard Lico dates the contract back to the summer of 2016, (Declaration of Richard Lico ¶ 2 [DE 16-20] ("Lico Decl.")), whereas Plaintiff dates it to 2017, (Pl. 56.1 ¶ 2). The contract's precise start date is immaterial to the Court's decision.

P. Mulry [DE 25-1] ("Mulry Decl.")). The parties debate whether their correspondence accurately and fully reflects the terms of their agreement.

Defendant understood the contract to make it "the exclusive distributor of tires produced by Plaintiff" in New York, New Jersey, Connecticut, Pennsylvania and Massachusetts. (Answer ¶ 51). Defendant traces its understanding to the emails and text messages, (Ex. I to Mulry Decl.), "customs and usage of the trade," (Def. Mem. in Opp. at 3 [DE 21] ("Def. Opp.")), and the parties' "long standing and consistent" relations, (*id.* at 4).

Plaintiff contends their arrangement never included an exclusivity provision. (Pl. 56.1 ¶ 15). According to Joseph Kao, the Operations Director of Plaintiff's wholly owned subsidiary, "if Plaintiff does provide exclusivity to a distributor it only does so through a written exclusive distributorship agreement." (*Id.* ¶ 16; Kao Decl. ¶¶ 1, 17). No invoices reference the purported exclusivity of the parties' arrangement. (Pl. 56.1 ¶ 18).

Plaintiff delivered, and Defendant accepted and paid for, tires until mid-April 2019. (*Id.* ¶ 9). At that time, Defendant halted further payment, leaving twenty-six invoices totaling $1,031,845.60 outstanding. (*Id.*). They remain unpaid. (*Id.*). Defendant "does not dispute that tires were delivered by" Plaintiff and that it "ow[es] certain amounts of money with respect to such tires." (Def. Opp. at 1).

Plaintiff brings three causes of action: breach of contract, (Compl. ¶¶ 21–27 [DE 1]), account stated, (*id.* ¶¶ 28–36), and "quantum valebant,"[3] (*id.* ¶¶ 37–46), each seeking the overdue $1,031,845.60. Plaintiff moves for summary judgment on the first two claims as well as for pre-judgment interest on the overdue payment. (*See* Pl. Mem. in Supp. at 5–8 [DE 25-14] ("Pl. Mem.")).

As noted, Defendant does not dispute overdue payment. Defendant instead affirmatively defends by arguing Plaintiff breached their contract first – (1) "by marketing and selling its product to persons other than the Defendant in Defendant's exclusive market" and refusing to stop at Defendant's request, (Answer ¶¶ 50–57); (2) "by failing to accept the return and replacement of merchandise requested by Defendant," (Def. 56.1 ¶ 2); and (3) "by shipping merchandise" to Defendant's third-party competitor without notifying Defendant, (*id.* ¶ 3). Defendant advances Plaintiff's breach as the reason to deny summary judgment, (*see* Def. Opp.); Defendant does not assert counterclaims nor cross-move for summary judgment thereon, despite contending it "is entitled to damages as a result" of Plaintiff's breach, (Answer ¶ 57).

**LEGAL STANDARD**

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant

---

[3] *Quantum valebant*, Black's Law Dictionary (11th ed. 2019) ("At common law, a count in an assumpsit action to recover payment for goods sold and delivered to another.").

governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Brady*, 863 F.2d at 210–11). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**DISCUSSION**

A district court sitting in diversity applies the choice-of-law rules of the forum state, here New York. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York law, contract actions are governed by the law of the state with "the most significant relationship to the transaction and the

parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317–18, 642 N.E.2d 1065 (N.Y. 1994). The parties do not expressly advance New York as the state with the most significant relationship. Plaintiff does so implicitly, analyzing the elements to its breach of contract and account stated causes of action "[u]nder New York law." *See* Pl. Mem. at 5. The Court cannot discern Defendant's position from its case citations. The Court finds New York has "the most significant relationship to the transaction and the parties." Plaintiff, a Taiwanese corporation, accepts New York law governs; Defendant is a New York citizen; the tires exchanged hands in New York; and Defendant warehoused the tires in New York. *See Zurich Ins. Co.*, 84 N.Y.2d at 317–18 (listing the relevant factors). As such, the Court applies New York law.

**I.    Account Stated**

Under New York law, a plaintiff can establish a claim for account stated by showing: "(1) an account was presented; (2) it was accepted as correct; and (3) Defendant promised to pay the amount stated." *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, 2021 WL 1225447, at *9 (S.D.N.Y. Mar. 31, 2021) (quoting *Cvar Von Habsburg Grp., LLC v. Decurion Corp.*, 2020 WL 4577440, at *3 (S.D.N.Y. Mar. 26, 2020)). The second and third elements "may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)).

Plaintiff easily establishes its account stated claim. Plaintiff attaches the twenty-six invoices signed and accepted by Defendant. Ex. A to Kao Decl. These invoices each reflect the quantity, type, and price of the tires Plaintiff delivered. *Id.*; Pl. 56.1 ¶ 5. Defendant never once objected to Plaintiff's statement of account. Pl. 56.1 ¶ 7. Defendant periodically paid down the invoiced amounts yet left $1,031,845.60 unpaid. *Id.* ¶ 8. A nearly identical showing warranted summary judgment in *George S. May International Co. v. Thirsty Moose, Inc.*: "Plaintiff also established a prima facie case for an account stated in that the invoices it produced were signed and accepted by defendant's president without objection and there is proof that defendant remitted a partial payment to plaintiff." 19 A.D.3d 721, 722, 796 N.Y.S.2d 196 (N.Y. App. Div., 3d Dep't 2005).

Even a generous reading of Defendant's Rule 56.1 Statement does not lead the Court to believe Defendant contests the facts underlying Plaintiff's account stated claim. *See* Def. 56.1. And, in any event, Defendant to date has never responded to Plaintiff's Notices to Admit dated July 1, 2020, which lays out the facts underpinning the claim. Pl. 56.1 ¶¶ 19–21; Mulry Decl. ¶¶ 4–9; *see* Exs. F–H [DE 25-9 to -11] to Mulry Decl. "A matter is admitted unless . . . the party to whom the request is directed serves . . . a written answer or objection addressed to the matter." Fed. R. Civ. P. 36(a)(3); *see also* Local Rule 56.1(c) ("Each numbered paragraph in the [movant's Rule 56.1] statement . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the [nonmovant's Rule 56.1] statement . . . ."). Accordingly, the Court deems

Defendant to admit to the (i) delivery, (ii) receipt, (iii) accuracy, and (iv) acceptance of the twenty-six invoices, as well as its (v) signature on, (vi) failure to object to, (vii) partial payment of, and (viii) acknowledgment of outstanding amounts reflected in the same. *See* Notices to Admit, Ex. F to Mulry Decl.

Nor does Defendant's Memorandum of Law in Opposition deny, or even introduce a legal argument that mentions, Plaintiff's account stated claim. *See* Def. Opp. It opens by "not disput[ing] that tires were delivered by [Plaintiff] to [Defendant] and that there remained owing certain amounts of money with respect to such tires." *Id.* at 1. Its accompanying materials corroborate this concession. For example, Richard Lico, Defendant's Director of Purchasing and Marketing, avers Defendant "purchased substantial numbers of tires" from and "paid substantial amounts of money" (in excess of $8,000,000.00) to Plaintiff. Lico Decl. ¶ 6. He notes that Defendant "continued to make payments on account of the invoices" as recent as April 2019 (*i.e.*, five months before Plaintiff filed its Complaint), "reducing the balance to the approximate $1,000,000 alleged by" Plaintiff. *Id.* ¶ 9.

Though unstated, Defendant may implicitly suggest its request "to return and replace [certain] tires with different tires from Plaintiff" reflects an objection to the account. *Id.* ¶ 7; Def. Opp. at 1. If so, Defendant lacks the "specific, as opposed to general, allegations of protest" sufficient to defeat summary judgment. *Levine v. Harriton & Furrer, LLP*, 92 A.D.3d 1176, 1179, 940 N.Y.S.2d 334 (N.Y. App. Div., 3d Dep't 2012). Evidence in the record, moreover, reveals Defendant's request was more a negotiation tactic than an objection:

> Q. At some point did you have communication with someone at [Plaintiff] with respect to trying to make payments on the . . . invoices that are the subject of this lawsuit?
>
> A. Yeah. I tried to negotiate this and, in fact, paid a large amount of money that's not even being discussed here.
>
> Q. What does that refer to, "paid a large amount of money"?
>
> A. When I became aware there was a past due issue it was much higher than this million dollars. So I kept sending them wires or checks.

Tr. of Deposition of Richard Lico at 42:12–23, Ex. J [DE 25-13] to Mulry Decl. Even if the law recognizes Defendant's requested return-and-exchange as an objection to the account stated—and Defendant cites no law to support this view—the record does not establish *when* Defendant made its request. New York law demands a defendant object "within a reasonable time." *IMG Fragrance Brands, LLC*, 679 F. Supp. 2d at 411. Defendant's fatal admissions, coupled with its omissions as noted above, rule out any genuine dispute on the material facts and warrant summary judgment in Plaintiff's favor, just as the *Citibank (S. Dakota) N.A. v. Jones* defendant's did:

> In opposing plaintiff's motion for summary judgment, defendant submitted her own affidavit and that of counsel. Notably, in her affidavit, defendant did not deny that she had made purchases with the credit card. She did not deny that she had received monthly statements from plaintiff indicating purchases made, payments received and balances due. Nor did she allege that she ever once objected to any particular charge or statement of balance due. Under these circumstances, we find that [the New York State] Supreme Court did not err in granting plaintiff summary judgment on the account stated cause of action since defendant impliedly agreed to pay the amount indicated when she received and retained the monthly statements without objection within a reasonable period. Indeed, defendant did not object at any time, including in her own affidavit in opposition to plaintiff's motion for summary judgment.

272 A.D.2d 815, 816, 708 N.Y.S.2d 517 (N.Y. App. Div., 3d Dep't 2000) (citing cases).

To the extent Defendant asserts the statute of frauds to defeat the account stated cause of action, the effort is in vain. "A written statement of account rendered to the defendant is sufficient to preclude any defense to an account stated based on the statute of frauds." *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 722 (S.D.N.Y. 1986) (citing *Milstein v. Montefiore Club of Buffalo, Inc.*, 47 A.D.2d 805, 805–06, 365 N.Y.S.2d 301 (N.Y. App. Div., 4th Dep't 1975)); *see Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 782 (2d Cir. 2003) (holding, under New York law, the "receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists" thereby "preclud[ing] a party from raising a statute of frauds" (quoting N.Y. UCC § 2–201, Official Comment ¶ 2)). To the extent Defendant likewise suggests Plaintiffs purported breach of the exclusivity provision thwarts a grant of summary judgment on account stated, Defendant is misguided. "An account stated is an agreement, *independent of the underlying agreement*, as to the amount due on past transactions." *Federated Fire Prot. Sys. Corp. v. 56 Leonard St., LLC*, 170 A.D.3d 432, 433, 93 N.Y.S.3d 558 (N.Y. App. Div., 1st Dep't 2019) (emphasis in original); *e.g.*, *Atsco Footwear Holdings, LLC v. KBG, LLC*, 193 A.D.3d 493, 495 (N.Y. App. Div., 1st Dep't 2021) (same).

Plaintiff therefore is entitled to summary judgment on its account stated cause of action based on the unpaid $1,031,845.60 reflected by the twenty-six invoices.

## II. Breach of Contract

The Court need not address Plaintiff's breach of contract claim because it is duplicative to the account stated cause of action. The two "arise from the same facts"—Defendant's failure to remit payment on the twenty-six invoices—and "do not allege distinct damages"—both requesting $1,031,845.60 in monetary relief. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotation marks, citation, and ellipses omitted); *compare* Compl. ¶¶ 21–27 (breach of contract), *with id.* ¶¶ 28–36 (account stated). Indeed, "Plaintiff's account stated claim expressly incorporates the allegations set forth in the section detailing the breach of contract cause of action, further indicating that the claims are duplicative of one another." *Arch Specialty Ins. Co.*, 2021 WL 1225447, at *10 (internal quotation marks and alteration omitted) (quoting *Fort Prods., Inc. v. Men's Med. Clinic, LLC*, 2016 WL 797577, at *4 (S.D.N.Y. Feb. 23, 2016)).

In any event, the breach of contract dispute is largely inapposite. The parties brief at length whether the statute of frauds applies to Plaintiff's breach of the purported exclusivity provision in their contractual arrangement. Pl. Mem. at 8–9; Def. Opp. at 2–4; Pl. Reply at 4–9. The statute of frauds "has no application to a situation such as this, in which it is conceded that a contract does exist and the dispute goes only to the terms of that contract." *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 331, 380 N.E.2d 239 (N.Y. 1978). And each party acknowledges Defendant's receipt and acceptance of Plaintiff's tires pursuant to their contractual arrangement for which payment remains outstanding, Pl. 56.1 ¶¶ 2, 9

(citing Kao Decl. ¶¶ 2, 10); Lico Decl. ¶¶ 2–3, 9 – but the statute of frauds likewise does not apply "with respect to goods . . . which have been received and accepted," N.Y. U.C.C. § 2-201(3)(c).

The Court's grant of summary judgment to Plaintiff on its account stated cause of action thus concludes the matter. *E.g.*, *Banker v. Esperanza Health Sys., Ltd.*, 2011 WL 867217, at *2 (S.D.N.Y. Mar. 10, 2011) (granting summary judgment on account stated cause of action and dismissing duplicative breach of contract cause of action "under New York law"); *see, e.g.*, *First Bank & Tr. v. Coventina Constr. Corp.*, 2019 WL 4120363, at *6 (E.D.N.Y. July 23) (same), *report and recommendation adopted*, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019); *Premier Steel, Inc. v. Hunterspoint Steel LLC*, 2010 WL 5248583, at *4 (S.D.N.Y. Dec. 16, 2010) (Francis, Mag. J.) (same).

### III. Pre- and Post-judgment Interest

Lastly, Plaintiff requests pre-judgment interest at a rate of nine percent (9%) per annum "from the earliest ascertainable date the cause of action existed." Pl. Mem. at 10 (quoting N.Y. C.P.L.R. §§ 5001, 5004). "It is well settled that state law applies to an award of pre-judgment interest in a diversity action in federal court." *EMI Music Mktg. v. Avatar Recs., Inc.*, 364 F. Supp. 2d 337, 344 (S.D.N.Y. 2005). Under New York law, a plaintiff "shall" recover pre-judgment interest on "a sum awarded because of a breach of performance of a contract," which "shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(a). An account stated cause of action under New York law "arises from a breach of contract" and "accrues on the date of the last transaction in the account."

*Fitzgerald Morris Baker Firth P.C. v. Mayor of Hoosick Falls*, 179 A.D.3d 1361, 1364, 118 N.Y.S.3d 278 (N.Y. App. Div., 3d Dep't 2020). Accordingly, the Court awards pre-judgment interest at nine percent (9%) per annum starting on April 15, 2019, the date on which Defendant stopped making payments to Plaintiff, and until judgment is entered. *See* N.Y. C.P.L.R. §§ 5001(a), 5004; *see also* Pl. 56.1 ¶ 9.

Post-judgment interest at the federal rate is "mandatory" under 28 U.S.C. § 1961(a) and accrues from the date of the entry of judgment until Defendant has satisfied the judgment. *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment on its account stated claim is GRANTED. Plaintiff's motion as to its breach of contract claim is dismissed as duplicative. Plaintiff is entitled to recover its stated final account of $1,031,845.60 plus interest at nine percent (9%) interest per annum accruing on April 15, 2019 to the date of judgment. Post-judgment interest at the federal rate accrues pursuant to 28 U.S.C. § 1961 from the date of the entry of judgment until Defendant has satisfied the judgment. The Clerk of Court is respectfully directed to enter judgment accordingly and to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York         s/ Denis R. Hurley
     June 22, 2021                         Denis R. Hurley
                                                               United States District Judge